## HOWARD OIL COMPANY V. AUGUSTUS FARMER.

(Case No. 1465.)

1. NEGLIGENCE — NOTICE. — In a suit for injuries sustained while carrying out orders of an employer, the answer set forth carelessness and negligence on the part of the plaintiff, alleging notice to him of the danger and explanation thereof. *Held,*

(1) That the plaintiff had the right to believe he could safely do the act by indicated means when so directed by an experienced workman, the plaintiff being inexperienced in the duty required and the danger not being obvious.

(2) That his failure to examine into the danger attending the performance of the duty, under such circumstances, was not negligence on the part of plaintiff.

2. SAME.— Some apparent danger must exist in order for a failure on the part of the person injured to minutely examine the machinery to constitute negligence.

3. EVIDENCE.— Where the evidence is sufficient to sustain the verdict, though there is also evidence upon which a different verdict might be based, there is no ground for reversal.

4. NEGLIGENCE.— See opinion for charge on negligence held correct.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Suit filed March 8, 1881, by Augustus Farmer against the Howard Oil Company for injuries sustained by Farmer on the 14th day of January, 1881, while in the employ of defendant. Appellant's counsel stated the case sub-stantially correct as follows:

Farmer was employed as a "stripper" in appellant's oil factory, and while rubbing off the "heater" by order of the superintendent, had two of his fingers cut off. (The heater is an iron cylinder about two and a half feet high, and about four and a half or five feet in diameter. It stands on one end and rests on a frame about three feet above the floor. Its bottom is a cast iron plate one and one-fourth inches thick.) The heater is used for heating the cotton seed meal preparatory to pressing the oil from it. The top of it is covered with an iron cover, one-half of which operates as a lid, which opens and stands open while the meal is being shoveled into the heater, and is shut down for the purpose of heating when sufficient meal has been thrown in. From the center of the bot-tom of the heater a staff or shaft extends up and perpen-dicularly through the top of it, and is made to revolve by machinery above the cylinder. To the lower end of this shaft and inside the heater are arms extending from the shaft to the inner surface of the cylinder or heater, which arms are continually revolving within the heater, and so close to the bottom as that the bottom is kept bright by the friction. This operation is for the purpose of stirring the meal and prevent burning while the latter

is heating. The meal is thrown in with a shovel from a bin which is close to the heater, at the rate of one hundred and sixty-five pounds every twenty minutes. There is an opening in the bottom of the heater, near the edge of it, about eight inches long, eight wide at one end and four at the other, giving it the shape, somewhat, of the key stone of an arch, through which the meal escapes when sufficiently heated. Attached to the bottom of the cylinder is an iron plate with two openings in it, corresponding with the opening in the bottom of the cylinder, and between the openings in this lower plate the plate has a solid surface sufficiently large to cover the opening in the bottom of the cylinder while the meal is heating. This lower plate is adjustable, so that a slight movement of the plate will close the opening in the bottom of the cylinder, or place one of its openings immediately under the one in the bottom of the cylinder so as to let the meal escape. The openings in this lower or adjustable plate have small flanges extending downward, to which are attached the bags in which the meal is pressed. These bags contain thirteen pounds each, and while one is being filled the bag is being removed from the other opening. This operation is attended to by the heaterman or stripper after having filled the heater with meal; and it was for these purposes that appellee was employed.

Appellee claimed that rubbing off the heater was not one of the duties of the stripper, and was dangerous because of the construction of the heater; that he was not acquainted with the danger attending it, but the appellant's superintendent was present and was acquainted with the danger, and ordered appellee to perform that service without informing him of the danger. Wherefore he claims to have been injured by the negligence of appellant and sues for damages.

Appellant pleaded the general issue; alleged that rubbing off the heater was one of the duties of a stripper; that ap-

pellee was instructed and informed of the danger before be attempted to rub it, and was injured by his own carelessness and negligence in putting his hand where he should not have put it, and without fault in appellant.

There was verdict and judgment for $600 in favor of appellee; motion for new trial; motion overruled and notice of appeal.

*Baker & Botts*, for appellant.

I. The master is not bound to take greater care of the servant than the servant is to take care of himself. The court had charged the jury as to the duty of appellant in informing appellee of dangers which he could not see by use of his eyes in the ordinary way, but refused to charge that it was also the duty of appellee to use his eyes in order to avoid danger, thus making it the duty of the master to take better care of the servant than the latter is required to take of himself. The rule is that the burden of proof is on the plaintiff to show that he was in the exercise of reasonable care, and this he must show affirmatively. Pierce on Railroads (ed. of 1881), p. 298; 1 Greenl. on Ev., sec. 81; Inda. & St. P. R. Co. *v.* Evans, 88 Ill., 63; Chicago & R. I. Co. *v.* Carlin, 37 Iowa, 316; Chicago & R. I. Co. *v.* Nelson, 38 Iowa, 564; Benton *v.* Central R. R. Co., 42 Iowa, 192; Deyo v. N. Y. Central, 34 N. Y., 9; Chamberlain *v.* M. & M. R. Co., 7 Wis., 431; Hinchley *v.* C. C. R. R. Co., 120 Mass., 257; Allyn *v.* Boston & A. R. Co., 105 Mass., 77; Hickey *v.* Boston & L. B. R. R. Co., 14 Allen, 429; Hale *v.* Dutant, 39 Tex., 667.

*Jones & Garnett*, for appellee

STAYTON, ASSOCIATE JUSTICE.— The record shows that the appellee entered the service of the appellant on the morning of the day on which he was injured; that the use of the machinery which he was operating and the care of the same was attended with danger, and that he was di-

rected by the superintendent of the business of appellant to perform a service in reference to the machinery which was attended with great danger. There is a conflict of evidence as to whether or not the appellee was cautioned in regard to the dangers attending the doing of the act which he was directed to perform and in the doing of which he received the injury upon which this suit is based, as well as to whether or not the danger was open to the observation of the appellee.

Under this state of the record, a jury having found a verdict in favor of the appellee upon evidence sufficient to sustain the verdict, it only becomes necessary to determine whether or not there was error in refusing to give the second charge asked by the appellant.

The charge asked was as follows: "It is the duty of one putting his hand on dangerous machinery, while in operation, to look and see where he is putting it; and if you believe from the evidence that at the time plaintiff was hurt, he knew or had opportunity to see, in the performance of his duties, the hole in the bottom of the heater, and knew that the arms were continually revolving on the inside, and that he put his hand under the heater without looking where he was putting it, and that if he had looked he would not have been injured, then the plaintiff is not entitled to recover, and you will find for the defendant."

The evidence shows that the appellee was a man inexperienced in the operation of the machinery. The superintendent testified that, "I knew he was a green hand, and I knew it was dangerous to wipe the plate with a rag, and yet I told him to do so." Even if the appellee did know that there was a hole in the bottom of the heater, and also knew that the arms were continually revolving on the inside, yet it does not follow that he knew that the revolving arms were in such close proximity to the lower plate of the heater as to render dangerous the

performance of the act which he was directed to do; and he had the right to believe that he could safely perform the act by the means indicated to him when directed so to do by an experienced man, the representative of the appellant. Under such circumstances he was not required to make such examination into the danger of the operation as he would have been under other circumstances.

There was nothing in the outer appearance of the machinery to indicate danger in doing the act directed to be done, and the evidence was conflicting as to whether or not such knowledge of the dangerous character of the machinery could be got by one in the ordinary operation of the same, or without a careful examination of the interior thereof when empty.

There should be some apparent danger before such exacting diligence should be required of an employee in ascertaining the danger attendant upon doing an act, as under the instruction asked would be incumbent upon him.

It is not believed that there was error in refusing the charge asked, and especially so when the court had in the main charge instructed the jury, under the facts, more accurately in regard to the care necessary upon the part of the appellee.

The court had instructed the jury as follows: "If plaintiff knew of the danger, and had notice of the character of such danger, negligently or carelessly put his hand in a hole in the bottom of the heater, or if he was specially cautioned about the danger of wiping the bottom of the heater, and he disregarded such caution, then he cannot recover, for in such case he contributed to the injury; and, when that is the case, the law will not permit a recovery by the person injured.

"If you believe from the testimony that during the time the plaintiff was employed at the heater he could

have seen and known by ordinary observation in the performance of his duty, that there was a hole in the bottom of the heater at or about the place where he received the injury, and that the arms were constantly revolving on the inside and over the hole near enough to the bottom to be almost certain to endanger his fingers if he put them in the hole, then, for the purposes of this case, it is the same as if he had actually known it; for one is held to know whatever it is their duty to know when he has had opportunity of knowing it."

This charge was as full and as liberal to the appellant as under the facts could have been given, and in a less objectionable form than the same had been asked.

If there had been no objection to the charge asked, the charge given being clear and full, and upon the same point, made it unnecessary to give it, and the refusal so to do was not error.

It is claimed that the verdict was contrary to the evidence, and that therefore the judgment should be reversed.

There was evidence sufficient to sustain the verdict, and there was also evidence upon which the jury might have found a different verdict, and this presents just the case in which this court has steadily refused to reverse. There being no error in the judgment it is affirmed.

                                        AFFIRMED.

[Opinion delivered February 24, 1882.]